# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT JACKSON
### Assigned on Briefs May 2, 2006

## STATE OF TENNESSEE v. CHARLES LEE WHITE

**Direct Appeal from the Circuit Court for Madison County**
**No. 04-153     Roger A. Page, Judge**

---

**No. W2005-02280-CCA-R3-CD  - Filed August 4, 2006**

---

The defendant, Charles Lee White, pled guilty to one count of aggravated burglary and three counts of sexual battery.  He was sentenced to an effective eight-year sentence, suspended, and placed on intensive probation.  Thereafter, the trial court revoked the defendant's probation and placed his sentence into effect.  On appeal, the defendant challenges the trial court's revocation of his probation.  Upon our review of the record and the parties' briefs, we affirm the judgment of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

J.C. McLin, J., delivered the opinion of the court, in which Thomas T. Woodall and John Everett Williams, JJ., joined.

Benjamin C. Mayo, Jackson, Tennessee, for the appellant, Charles Lee White.

Paul G. Summers, Attorney General and Reporter; Brent C. Cherry, Assistant Attorney General; Jerry Woodall, District Attorney General; and James Thompson, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

## BACKGROUND

The defendant pled guilty[1] to one count of aggravated burglary and three counts of sexual battery for a total effective sentence of eight years.[2]  The defendant's sentence was suspended and

---

[1] The record is not entirely clear whether the defendant entered a best interest guilty plea or a regular guilty plea.

[2] The record includes the defendant's request for acceptance of a plea of guilty which indicates that he would also plead guilty to one count of coercion of a witness.  Also, the probation order indicates that the defendant was convicted of coercion of a witness.  However, the judgment sheet indicates that this charge was dismissed.

he was placed on probation in late October or early November 2004. On June 1, 2005, the trial court issued a warrant against the defendant for various violations of the conditions of his probation. On August 26, 2005, the trial court conducted a hearing, during which, Russell Phillips, the defendant's probation officer, and the defendant testified.

Phillips testified that he took over as the defendant's probation officer in early January 2005. Phillips recalled that he explained to the defendant the registration and living requirements for sex offenders. Phillips explained that one of the conditions of the defendant's probation was to report any arrests for new offenses. According to Phillips, the defendant violated that condition because he was arrested on May 28, 2005, but failed to contact him to report the arrest. Phillips said he found out about the defendant's arrest from a police report.

Phillips also testified that the defendant violated another condition of his probation that he report any change in his residency. According to Phillips, he visited the defendant's reported address on March 2, 2005, and a "female friend . . . reported that he no longer lived there." Phillips explained that the defendant later gave him a new address sometime after the March 2nd visit, but on April 15, 2005, Phillips visited that address and "[i]t didn't seem like anybody lived there."

Phillips next testified that the defendant's probation requirements also included sex offender registration three times a year. Phillips recalled that the defendant registered during his initial visit but failed to register in March 2005. Phillips also pointed out that the defendant was required to attend sex offender group treatment sessions twice a month. However, Phillips recalled that the defendant did not attend any treatment sessions in April or May.

Phillips remembered that the last time he talked to the defendant was after the second March treatment session. Phillips recalled that the defendant smelled like alcohol and admitted to Phillips that he had been drinking alcoholic beverages. Phillips said he informed the defendant that drinking alcohol was a violation of his probation, but he must have overlooked putting the incident in his report. Phillips concluded that the defendant was a poor candidate for success on probation.

On cross-examination, Phillips elaborated that the defendant was arrested for failing to appear on drug charges on May 28, 2005. Phillips admitted, however, that he did not know when the defendant was supposed to appear on those charges, so he did not know whether the defendant in fact failed to appear. Defense counsel then questioned Phillips about when the defendant was supposed to report his arrest if the warrant was issued on June 1st, only three days later. Phillips explained that he already had an initial warrant prepared "as far as [the defendant] being absconded," and the failure to report a new arrest was a follow-up.

Phillips admitted that the defendant did give him two new reported addresses but clarified he checked the two addresses and the defendant was not there. Regarding the address he visited on March 2nd, Phillips testified that he could see that the lady who answered the door lived there although he did not request a rental or lease agreement. Phillips testified that the defendant knew Phillips made his visits at night.

Phillips reiterated that the defendant was required to register as a sex offender three times a year. Because the defendant registered initially in October 2004, he was due to register again in March 2005. Phillips explained that the Tennessee Bureau of Investigation computer automatically generates a registration date and the offender is given a seven day window in which to register. Phillips admitted that the registration date was sent to him and he was to provide that information to the defendant. Phillips asserted, however, that the defendant had been going through the registration process long before he became the defendant's probation officer and the defendant knew what to do. Phillips further explained that the defendant was also required to register whenever he changed his address but he had not done so since December.

Regarding the defendant's missed group therapy sessions, Phillips testified that he had the sign-in sheets for the two April and two May sessions and the defendant's name was not on the lists. Phillips admitted that the defendant told him that he could not write or read very well, but Phillips maintained that he read the directives to the defendant and the defendant could sign his name. Phillips did not recall whether the defendant ever tried to get a hold of him in the office and said the defendant never left a voice mail.

Regarding his failure to report an arrest, the defendant testified that he "got busted . . . for a speeding ticket on the 28th of May. And [he] asked . . . Tracy at the desk down there -- to let [him] use the phone so [he] could report that. And they never let [him] use the phone." The defendant said that he was pretty sure the Board of Probation and Parole did not accept collect calls. The defendant also said that he could not get through to any of his family members to have them report his arrest to his probation officer. The defendant recalled that he sent his son to the probation office on June 1st and "finally got him to tell him when I did get through to somebody."

Regarding his failure to notify Phillips of his change of addresses, the defendant explained that Phillips went to an address where he told Phillips he no longer lived and Phillips did not get the new address right. The defendant maintained that he always told the probation office when he changed his residence. The defendant testified that he was illiterate and only knew what he was to do to comply with his probation when his probation officer told him. The defendant said that he never received information in the mail and never received help filling out forms. He said he did sometimes sign forms that were filled out for him.

The defendant testified that he thought he was only required to register as a sex offender every two years. However, he remembered that he was registered "three or four times by three different probation officers in two weeks." The defendant remembered attempting to contact Phillips prior to his arrest but he was always told that Phillips was not in the office. The defendant said that he had a real serious drinking problem and was trying to get help but nobody would help him.

The defendant explained that he moved from place to place because "the people [where he lived] smoked crack." He said that he asked for help finding a new place to live but he "was told

that a probation officer was supposed to help [him] and then [he] was told by somebody else that he wasn't supposed to help [him]."

The defendant testified that he would sometimes fail to sign certain forms that he did not know he was supposed to sign, but he would always sign forms "[w]hen [he] knew about them." He also remembered that there was one time he went by to see Phillips but he went too late. Regarding his missed treatment sessions, the defendant testified that he missed a couple because of his bad drinking problem, and a couple of times he went but failed to sign in. He explained that the times he failed to sign in, the book was not there and somebody told him, "You here, so you don't have to sign."

On cross-examination, the defendant testified that the reason he called his son to report his arrest was because the officers at the jail would not give him the phone number for the probation office and would not let him use a phone book. The defendant denied having been told by Phillips to report every Friday due to problems in the past. The defendant testified that Phillips initially told him to report on Tuesdays as did his prior probation officer. In response to questioning about his bi-monthly treatment sessions, the defendant said that he "made some of them and some of them [he] was drinking real hard." The defendant also admitted that he "showed up drinking" to some of the sessions.

> Following the conclusion of the proof, the trial court found as follows:
> Based on the proof I've heard I'm going to find that [the defendant] has violated the terms of his probation by a preponderance of the evidence, based on the credibility of the witnesses . . . for the following reasons: That he's not followed the rules of probation by reporting when his officer told him to; he has not abided by all the rules concerning reporting for a sex offender; and has not attended his sex offender group classes as ordered to do so by his probation officer.
>
> As far as these other allegations in the warrant, I'm not going to consider those. But based on that, he should be revoked to serve his sentence.

## ANALYSIS

On appeal, the defendant argues that the trial court erred in revoking his probation. Specifically, he argues that there is no substantial evidence in the record to support the trial court's conclusions that he failed to report a change of address, failed to register as a sex offender, and failed to attend sex offender counseling sessions.

Initially, we note that the decision to revoke probation lies in the sound discretion of the trial court. *State v. Leach*, 914 S.W.2d 104, 106 (Tenn. Crim. App. 1995). The trial court may revoke probation upon finding by a preponderance of the evidence that the defendant has violated the conditions of his or her probation. *See* Tenn. Code Ann. §§ 40-35-310,-311(e); *State v. Harkins*, 811 S.W.2d 79, 82 (Tenn. 1991). Revocation of probation is subject to an abuse of discretion standard

of review, rather than a de novo standard. *Id.* If the trial judge has exercised "conscientious judgment in making the decision rather than acting arbitrarily," then there is no abuse of discretion. *Leach*, 914 S.W.2d at 107. Discretion is abused only if the record contains no substantial evidence to support the trial court's conclusion that a violation has occurred. *Harkins*, 811 S.W.2d at 82; *State v. Gregory*, 946 S.W.2d 829, 832 (Tenn. Crim. App. 1997).

In the present case, the trial court specifically stated that its decision was based on the credibility of the witnesses. In a probation revocation hearing, the credibility of the witnesses is for the determination of the trial court, and such determination is given the weight of a jury verdict on review. *State v. Wall*, 909 S.W.2d 8, 10 (Tenn. Crim. App. 1994). According to Phillips' testimony, the defendant violated the following conditions of his probation: he failed to report all changes of address, he failed to register as a sex-offender in March 2005 and after each change of address, and he failed to attend group counseling sessions in April and May 2005. Accrediting Phillips' testimony, as did the trial court, it is our view the record contains substantial evidence to support the trial court's conclusion that the defendant violated the conditions of his probation.

## CONCLUSION

Based upon our review of the record and the parties' briefs, we affirm the trial court's revocation of the defendant's probation.

_____
J.C. McLIN, JUDGE